# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

SECURITIES AND EXCHANGE COMMISSION,

           Plaintiff,

v.

RICARDI CELICOURT and
BRISLY GUILLAUME,

           Defendants.
_____/

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

### I. INTRODUCTION

1. From approximately April 2021 until June 2023, Defendants Ricardi Celicourt ("Celicourt") and Brisly Guillaume ("Guillaume") (collectively, "Defendants") acted as unregistered brokers on behalf of Royal Bengal Logistics, Inc. ("RBL"), a trucking and logistics company that is the subject of a related Commission enforcement action[1] for its operation of an affinity fraud and Ponzi scheme targeting South Florida's Haitian-American community.

2. Of the total $112 million raised as part of the scheme, Defendants helped raise at least $109 million from the offer and sale of securities of RBL and received approximately $1.3 million in transaction-based compensation in the form of bonuses. At all times relevant, Defendants were not registered with the Commission as brokers or dealers or associated with a registered broker-dealer. Also, RBL's securities were not registered with the Commission, and there was no available exemption from registration for the offer or sale of these securities.

---

[1] *SEC v. Royal Bengal Logistics, Inc., et al.*, Case No. 23-61179-DSL (S.D. Fla. June 20, 2023).

3. By engaging in this conduct, Defendants violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c)] and Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 USC § 78o(a)(1)]. Unless enjoined, Defendants are reasonably likely to continue to violate the federal securities laws. The Commission also seeks against Defendants disgorgement of ill-gotten gains, along with prejudgment interest thereon, and civil monetary penalties.

## II. DEFENDANTS AND RELEVANT ENTITY

### A. Defendants

4. Celicourt, age 40, is an individual residing in Coconut Creek, Florida. From approximately April 2021 through June 2023, Celicourt served as RBL's Vice President of Business Development and Investor Relations, and offered and sold investments in RBL to the investing public. Celicourt has never been registered with the Commission.

5. Guillaume, age 39, is an individual residing in Boynton Beach, Florida. From approximately April 2021 through June 2023, Guillaume served as RBL's Director of Business Development and Investor Relations, and offered and sold investments in RBL to the investing public. Guillaume has never been registered with the Commission.

### B. Relevant Entity

6. RBL was a Florida for-profit corporation with its principal place of business in Coral Springs, Florida. RBL was formed in June 2018 for the purpose of operating a trucking and logistics business. RBL began raising funds from investors in 2019 purportedly to increase the size of its fleet of trucks and grow its operations. RBL's investment offerings have never been registered with the Commission.

7. On June 20, 2023, the Commission filed an emergency action against RBL and its then-President Sanjay Singh ("Singh"), alleging RBL was operating an affinity fraud and Ponzi

scheme targeting South Florida's Haitian-American community. The Commission's complaint alleged that during RBL's unregistered offering, RBL and Singh made material misrepresentations and omissions to investors about, among other things, RBL's business and profitability, its use of investor funds, and the source of investor returns.

### III.   JURISDICTION AND VENUE

8.   The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], and Sections 21(d), 21(e), and Section 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d), 78u (e), and 78aa(a)].

9.   This Court has personal jurisdiction over the Defendants, and venue lies in the Southern District of Florida because Defendants reside in the District, and most of the transactions and acts constituting the violations alleged in this Complaint occurred in this District.

10.   In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

### IV.   FACTUAL ALLEGATIONS

#### A.   RBL's Unregistered Securities Offerings

11.   RBL was a transportation and logistics company registered as a common carrier with the U.S. Department of Transportation.

12.   From at least August 2019 until the Commission filed its emergency action in June 2023 against RBL and others, RBL operated a Ponzi scheme by offering and selling unregistered securities of RBL (the "Offering").

3

13. The scheme raised at least $112 million from as many as 1,500 investors. A majority of the investors were from South Florida's Haitian-American community, but also included residents from at least 17 other states, the District of Columbia, Haiti, Canada, and India.

14. The Offering included at least four investment programs, promising guaranteed returns ranging from 12.5% to as high as 325% depending on the program (collectively, "RBL's Investment Programs").

### *(i) RBL's Short & Long Term Investment Programs*

15. RBL offered investors the opportunity to invest in RBL's business through two loan programs, a Short Term Investment Program (the "Short Term Program") and a Long Term Owner Financing Program (the "Long Term Program"). RBL represented to investors that investments in either loan program would be used in RBL's general business operations.

16. RBL's Short Term Program required a minimum investment of $25,000, with a maximum investment of $200,000, for a period of 90 to 365 days depending upon the investment amount. At the end of the loan period, RBL was obligated to repay investors their principal investment plus interest ranging from 20-24% depending on the investment amount and term selected by the investor.

17. RBL's Long Term Program required a minimum investment of $60,000, with a maximum of $250,000, for a 36-month term. Under the Long Term Program, RBL was obligated to pay investors monthly payments based on an annual 12.5% interest rate.

### *(ii) RBL's Trailer Sponsorship Program*

18. The third investment program offered by RBL was its Trailer Sponsorship Program (the "Trailer Program"). The Trailer Program was a six-month program that offered investors the opportunity to sponsor the building and purchase of a tractor-trailer on behalf of RBL.

19. Under the Trailer Program, the minimum investment was $50,000, with a maximum investment of $200,000, for a period of 180 days. RBL represented to investors that their funds would be used to build trailers in India, which were then disassembled and shipped to the United States. RBL claimed that upon arriving in the U.S., the trailers were then reassembled and added to RBL's fleet or sold for a profit. At the end of the period, RBL was obligated to repay investors their principal investment plus 30% interest.

### *(iii) RBL's Truck Program*

20. RBL's Equipment Management Investment Program (the "Truck Program") had a five-year term (the longest of RBL's Investment Programs) and offered the highest returns. The Truck Program required a minimum investment of $55,000 that RBL purportedly used toward the purchase of a semi-truck on behalf of the investor.

21. RBL explained to prospective investors that it took all steps to purchase and operate the truck on behalf of the investor, including identifying and purchasing the truck, arranging financing for the investor to purchase the truck, assigning a driver, obtaining licensing, registration and insurance, and maintaining the truck. Investors were required to make the investment through a new or existing corporation or limited liability company created by the investor, which RBL claimed would be the legal owner of the truck.

22. Under the terms of the Truck Program, the investor agreed to lease the truck to RBL for a five-year term. RBL paid the investor monthly lease payments in the amount of $3,000, beginning on the third month for 58 months. At the end of the five-year term, an investor in the Truck Program would have received $174,000 in lease payments alone, representing at least a 216% return on investment. The investor also purportedly owned the truck outright, which the investor could keep, sell to RBL, or sell to a third party. Assuming the truck is valued at

approximately $55,000 when returned to the investor at the end of the five-year lease, the total return on investment would be 316%.

23. Investors could also invest $110,000 in the Truck Program for the purchase of two trucks. As an incentive to invest in two trucks, RBL paid investors a $10,000 rebate 30 days after receipt of the investor's investment. Under the two-truck option, RBL paid investors monthly lease payments in the amount of $6,000 for 58 months, after which an investor in the Truck Program owned two trucks outright and would have received $358,000, representing at least a 225% return on investment. Assuming the combined value of the trucks is approximately $110,000 when returned to the investor at the end of the five-year lease, the total return on investment would be 325%.

24. RBL's Investment Programs constituted investment contracts and were, therefore, securities under *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). With respect to these investment programs, there was (a) an investment of money; (b) in a common enterprise; (c) based on the expectation of profits to be derived from the entrepreneurial or managerial efforts of others. *See SEC v. Friendly Power Co., LLC*, 49 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999). Further, the Short Term and Long Term Programs are notes constituting securities under *Reves v. Ernst & Young*, 494 U.S. 56, 65, 67 (1990).

25. New investors typically began by investing $25,000 in RBL's Short Term Program, which was an apparent teaser program designed to lure investors into making larger investments over longer periods of time. After the three-month investment period, when RBL repaid investors their initial $25,000 investment, plus $5,000 of "interest," many investors decided to roll their $30,000 principal and interest payment into RBL's Truck Program, which required an additional $25,000 investment and a five-year term.

6

26. In their solicitation of investors, Defendants touted the success of RBL's business model, and told investors that their money would be used to grow RBL's operations and increase RBL's fleet of semi-trucks and trailers. Among other things, Defendants assured investors and prospective investors that their investment programs were safe.

27. No registration statement was filed with the Commission or was in effect at the time of the Offering, and no exemption from registration was available.

28. Throughout the duration of the Offering, RBL and Defendants engaged in the general solicitation of investors.

    **B.**    **Defendants Solicit Investors for RBL's Unregistered Securities Offering**

29. Defendants solicited investors through promotional videos (including videos which were publicly available on YouTube and RBL's website), in-person investor presentations, investor conferences, and word-of-mouth.

30. Prior to investing in one of RBL's Investment Programs, investors typically met with a member of RBL's Business Development and Investor Relations Department (the "BDIR Department"), including with the Defendants.

31. Defendants and others in the BDIR Department routinely spoke with investors about RBL's Investment Programs and provided them offering materials and a brochure, entitled "RBL Investor Plan," which described each of the four investment programs along with their requirements.

32. From April 2021 through June 2023, while the Defendants served in the BDIR Department, RBL raised at least $109 million of the total $112 million raised from investors.

    ***(i)***    ***Celicourt's Conduct***

33. Celicourt served as the Vice President of Business Development and Investor Relations from approximately April 2021 through June 2023. Celicourt's role was to help RBL

7

grow by bringing new investor funds into the company. In this role, Celicourt oversaw RBL's investor sales team and personally offered and sold RBL's securities to investors in the Offering.

34. Celicourt raised new investor funds for RBL and regularly met with investors to explain RBL's business and assist them with the investment process.

35. Celicourt also signed investment contracts on behalf of RBL and assisted with investor meetings and presentations.

36. Celicourt appeared in RBL promotional videos posted on YouTube and RBL's website, and participated in formal presentations to groups of investors, including a November 2022 Zoom meeting. Celicourt discussed, among other things, RBL's growing business as well as price increases to their investment programs. Celicourt told investors that the minimum investment amount for the Truck Program would soon increase from $45,000 to $55,000. He also discussed investor returns, stating that some investors had made over $100,000 in profits.

37. Celicourt received a salary of approximately $107,000 in 2022 and, for his participation in the Offering, was compensated approximately $517,000 in bonuses tied to the performance of the BDIR Department, which raised capital for RBL from investors.

*(ii) Guillaume's Conduct*

38. Guillaume initially served as RBL's Fleet Manager from approximately April 2020 through April 2021. From at least April 2021 until June 2023, Guillaume worked as RBL's Director of Business Development and Investor Relations under Celicourt.

39. As a director, Guillaume regularly pitched investors on RBL's Investment Programs, assisted investors with establishing their own companies through which they invested in RBL, and walked investors through all relevant steps in RBL's Truck Program, including signing investment agreements on behalf of RBL.

40. Guillaume met with prospective investors and used brochures provided by RBL containing information concerning RBL's Investment Programs.

41. Guillaume appeared in RBL's promotional videos posted on YouTube and RBL's website touting the company's success as well as his work with investors to build a partnership of trust and respect. Guillaume also appeared during the November 2022 Zoom investor presentation, introduced himself as the Executive Director of Business Development and stated, among other things, that RBL's fundamentals were strong, projecting 250,000 new trailers to be built in one year. Guillaume also informed investors that the minimum investment amount for RBL's truck program would soon increase to $55,000.

42. Guillaume also attended RBL's February 2023 investor conference where he, again, discussed the company's success.

43. Guillaume received a salary of approximately $55,000 in 2022 and, for his participation in the Offering, was compensated approximately $787,000 in bonuses tied to the performance of the BDIR Department, which raised capital for RBL through investors.

## V.   VIOLATIONS ALLEGED

### COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act

44. The Commission repeats and realleges paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45. No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities offered and sold by the Defendants as described in this Complaint, and no exemption from registration existed with respect to these securities.

46. From at least April 2021 through June 2023, the Defendants directly and indirectly:

(a) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b) carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

(c) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the Commission as to such securities.

47. By reason of the foregoing, Defendants violated and, unless enjoined, are reasonably likely to continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Violations of Section 15(a)(1) of the Exchange Act

48. The Commission repeats and realleges paragraphs 1 through 43 of this Complaint as if fully set forth herein.

49. From approximately April 2021 and continuing through approximately June 2023, the Defendants, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, effected transactions in, or induced or attempted to induce the purchase or sale of securities, while they were not registered with the Commission as a broker or dealer or when they were not associated with an entity registered with the Commission as a broker-dealer.

50. By reason of the foregoing Defendants violated and, unless enjoined, are reasonably likely to continue to violate Section 15(a)(1) of the Exchange Act [15 U.S.C. §78o(a)(1)].

## VI. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

### A. Permanent Injunction

Issue Permanent Injunctions, enjoining Celicourt and Guillaume, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)] and Section 15(a)(1) of the Exchange Act [15 U.S.C. §78o(a)(1)].

### B. Disgorgement

Issue an Order directing Defendants to disgorge all ill-gotten gains received within the applicable statute of limitations, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### C. Penalties

Issue an Order directing Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

### D. Further Relief

Grant such other and further relief as may be necessary and appropriate.

### E. Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## VII.  DEMAND FOR JURY TRIAL

The Commission hereby demands a jury trial on all issues so triable.

Dated: July 18, 2024                    Respectfully submitted,

**Russell R. O'Brien**
Russell R. O'Brien
Trial Counsel
Florida Bar No. 084542
Direct Dial: (305) 982-6341
Email: obrienru@sec.gov

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1950
Miami, Florida 33131

Of counsel:
Linda Schmidt, Senior Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, Florida 33131